The next case today is Darwin Cuesta-Rojas v. William Barr, appeal number 20-1302. Attorney Friedel, please introduce yourself. My name is Irene Friedel, and I'm representing the petitioner Darwin Cuesta-Rojas. He had pleased the court. Earlier this year, the court gave strong voice to the statutory right to counsel, but my client's case was handled in the immigration court at breakneck speed by an IJ as if the statutory right to counsel did not exist. My client's asylum claim was resolved from start to finish in 28 business days. The lack of counsel and the speed at which it was resolved tainted every aspect of the case. The lack of counsel and the speed of the case prevented my client from getting key corroborating documents in front of the IJ, and those documents would have resolved credibility concerns that arose from the asylum officer's credible fear interview notes. Counsel, excuse me, I understand that your briefing takes place in the wake, I guess, of the Hernandez-Lara decision, but what allows you, if this is what you're doing, to invoke the same kind of statutory right to counsel argument that was present in that case when it was never raised here? Don't you face an insurmountable exhaustion issue with respect to that? I understand that it flavors the case, perhaps, but I don't know how it offers you any legal relief in this case. Your Honor, I don't think this court is jurisdictionally barred from raising the right to counsel or from my client raising the right to counsel and due process issues because, first, the issue should be exempt from the exhaustion statute. My client, and that's section 1252d2, my client was pro se, and he could not have presented the issues to the BIA because he didn't know that they existed because he didn't have counsel. This presents a catch-22, and it will cause an important issue to evade review, frustrating the statutory right to counsel provided by Congress. If not addressed in this case, the issue is likely to continue to percolate up to the court. You know, I've read the entire record here. One might take a different view of whether this was breakneck speed or not. The immigration judge gave him a list of counsel, gave him more time, then gave him more time again, and he, when the immigration judge said, are you ready to proceed? I've told you if you don't get counsel, you have to proceed. He did not ask for more time. He gave no indication whatsoever that he was raising a counsel or, for that matter, that he had been deprived of counsel. So, I tend to view this as a situation in which we would require counsel. I'm sorry, would require exhaustion. There's nothing about the facts here that I think would make this a test case on these sorts of issues. To my mind, the case actually turns on the adverse credibility finding by the immigration judge. I'd like to hear your argument about why the record compels a different conclusion. And, Your Honor, may I first respond to your comment about the right to counsel? So, under the Hernandez-Lahr decision and In Re CB, the judge was required to either get an express waiver of my client's right to counsel or provide a realistic and reasonable opportunity to find counsel. He did not do either. He did not expressly, he did not ask my client if he was expressly waiving counsel at no time, and then he did not provide a reasonable and realistic opportunity to find counsel. Only at the first master calendar hearing did the I.J. ask my client if he wanted more time to find counsel. At no time after that did the I.J. ask my client. At the next master calendar hearing, he proceeded to find my client removable and had a bond hearing. Yes, but there's no question your client was removable, right? That's not disputed. We're not objecting to that. The issue is whether he was entitled to asylum, essentially. Okay, so what is your argument that the record compelled both the immigration judge and the BIA to find him credible? So the adverse credibility decision rested on several fragments from the non-verbatim notes of the credible fear interview, which was conducted by phone through an interpreter. The notes were largely consistent with my client's 589 end of hearing testimony, and those fragments do not constitute reasonable, substantial, and probative evidence, and I don't think the adverse credibility decision was made in a vacuum, apart from the procedural flaws in this case. The case went incredibly rapidly. My client received corroborating documents from Cuba shortly after the removal order was entered. Those corroborating documents were extremely material and on point. They were of the type that the I.J. had wanted to see in the case. My client didn't have time to get them from Cuba. He was detained. He had no counsel. He didn't have them in time for the individual hearing, which was scheduled one week after the judge said the types of corroborating documents he wanted. So those documents corroborated the concerns of the judge's counsel. Judge Barron has a question. Slow down, please. What do you understand the basis for the BIA and the I.J.'s finding of him being not credible to be? The adverse credibility finding, my understanding is that it rested on several issues arising from the credible peer interview notes. These are the various inconsistencies? Yes. I mean, I believe there are more omissions than inconsistencies, but yes. Do you understand the finding as to credibility to be partially dependent on the absence of determination on credibility to be solely based on the inconsistencies and the corroboration to only arise in the course of the I.J.'s determination that he hadn't explained away the inconsistencies? Do you understand the difference between those two? I believe it was, sorry, the corroboration was necessitated by the I.J.'s concerns with the asylum officer's notes. I understand, but with respect, let me put it this way. One possibility is that the credibility finding that he was not credible was based on inconsistencies. When you make such a finding of a lack of credibility based on inconsistencies, it is possible for the one seeking asylum to rehabilitate himself with corroborating evidence, and it is also possible the I.J. can say, but the corroborating evidence isn't good enough to overcome your inconsistencies, so my credibility finding stands. A separate ground for finding a person seeking asylum not to be credible is that I've heard your story, but there's no corroboration for it, so I don't believe it. Those are two different ways of finding a person not to be credible. I can't tell from the record whether that was the exclusive basis for the finding of no credibility or whether the finding of credibility was partly influenced by the determination by the I.J. that there was no corroboration for the story, and I can't quite tell what the BIA thought the I.J. was doing on that point. Just to make clear why I'm asking you this, if I were to agree with you the inconsistencies were too picky to support a finding of no credibility, yet I also thought part of the credibility finding was based on a lack of corroboration. That might support vacating rather than reversing the I.J. and BIA decision. I do believe the inconsistencies or omissions from the CFI notes could have been remedied by finding that there are inconsistencies with the CFI notes that you should have provided corroboration. I told you at the last Master Calendar hearing what types of corroboration I wanted. That was one week prior. My client said I did not have time to get the corroboration. My client did provide some corroboration. I didn't put the question right. You're not answering the question I want you to ask. If the credibility finding rests on two legs, a finding of inconsistency plus skepticism about the story because of an absence of corroboration, then determining that the inconsistencies alone are too minor to support a finding of no credibility would not address the corroboration point. If we thought that there was force to the corroboration, that there was not sufficient corroboration, then we could just remand the credibility finding. On the other hand, if the finding about credibility rests solely on a finding of inconsistencies and that's wrong, then we would just reverse the credibility finding because the only basis for the credibility finding would be the inconsistencies. Quite a lot in my mind rides on which of the two things the IJ thought it was doing and which of the two things the BIA thought the IJ was doing when it affirmed the IJ. I'm trying to get your view as to which thing you thought the IJ is doing. Maybe explaining it that way makes it pretty obvious how your answer should be, but I would like you to try and work through for me what the right way to do it and why the record supports whatever answer you're going to give. The IJ found there were inconsistencies that I believe could have been resolved by corroboration and he did not see the corroboration in the record at that time. The inconsistencies were more a matter of omissions. My client's narrative was plausible. I don't think the IJ at any time could have said this is not a plausible narrative. It was a straightforward political opinion case from Cuba and it was a matter of not supplying the necessary corroboration. I don't know if that answers your Honor's question. Can I ask something about the corroborative evidence which was provided to the BIA and considered by the BIA? There's a hospital report about treatment for a small wound in the left abdomen, I believe, but unlike the earlier hospital report, there is no mention of surgery, no mention of his purported five-day stay at the hospital, and certainly no mention of his claim that the government set a bunch of goons to leap out of a car, stab him quickly in the abdomen in a wound that was less than an inch and a half, and then run away. So I don't see how the corroborative evidence offered, which the BIA considered, even corroborates that aspect of his testimony. I just don't see that it corroborates much of anything other than he was from Cuba, he was born there, he lived in a particular neighborhood. So would you like to comment on that? Yes, your Honor. The judge's concerns, the two of the judge's primary concerns with the asylum officer's notes were that there was not a connection between the stabbing and the date of the stabbing, and there was not identification of the December 2017. No, but it led to an overall assessment of lack of credibility, and you say the credibility is established by the corroborative documents, but I'm having trouble seeing that. Well, my client's testimony was otherwise consistent with his, you know, from his I-589, he prepared himself, the asylum notes are largely consistent with his hearing testimony, so there was no basis to find him not credible outside of those three issues that the IJ raised with the CFI notes. There was no finding on demeanor, no finding he was evasive, no finding that his testimony in court was internally inconsistent, everything was consistent, and he didn't have counsel helping him. And so these documents do show, they corroborate his political activity in Cuba, and that was actually before the IJ at the individual hearing, there was a letter from the delegate of the political group my client was involved in, the IJ didn't address that, but all of these, the testimony was consistent and plausible, and it was corroborated by the hospital records to the extent that those records show that he had been stabbed, just as he always had said he'd been stabbed. It shows the wound, that's all it shows, but Judge Lopez, do you have any questions? Yes, thank you, I do. I'm trying to understand the, in your request for relief, what, your client in proceedings before the BIA asked them to consider corroborating documents that he now has, and you say, I believe that the BIA, I guess I'm asking this question, is it your position that the BIA should have considered those documents, and that failure to do so is part of the error that you cite in these proceedings? Are you making that argument? Yes, your honor, I believe it was an abuse of discretion for the BIA not to remand when the documents were precisely the type that the IJ had asked, had said to my client that he wanted to see, and they were material, and directly, in my view, corroborative of his testimony. What's puzzling, there's sort of this cryptic statement in the BIA's decision, they say that in addition, the newly submitted evidence does not address or resolve the credibility concerns raised by the immigration judge, which supported the conclusions reached by him. I mean, that suggests that the BIA actually did consider those documents. Do I misread? It may be a bit unusual for them to have done that, but it seems to me that they're saying they looked at them, and it doesn't change anything. Right, I understand that statement is there, but the only reasons they articulated beyond that were that there was no envelope, and that my client had suggested that the hospital records could not be procured, and so they didn't accept that they now existed, and had been provided. So we don't know beyond those two things that they articulated, we don't know what their were not corroborative of. I mean, I think at a minimum... I'm sorry, the statement makes it pretty clear that they're saying they considered them. So, are you accepting that? Well, the statement is what it is. I would say it's the IJ is the fact finder that should be looking at the documents, and considering them, and my client should be given an opportunity to pass to the documents and provide his mother, this is sort of an offer of proof, but it was attached to the motion to stay that I filed. He received a document from his mother after the BIA decision with a chain of custody explaining exactly how these documents came to the United States. My client, the point is this case was happened, this case progressed so quickly in the immigration court that my client was never able to put all of this testimony out, present the evidence, he did not have a full and fair hearing, and he does have a very credible political opinion case from Cuba. He just was, it was as if he was blindfolded with his hands behind his back because he was pro se, he was detained, he was detained in Rhode Island, and he had almost no time. When you think about somebody who's detained in a foreign national, he had no contacts here, there was no time to get counsel. Let me ask you this question. I understood you to be arguing that there was a ground for either vacating or reversing the BIA, setting aside the treatment of the new documents, just on the ground that the inconsistencies that the IJ at least partially relied on could not support a no credibility finding given the nature of those inconsistencies. If I were to agree with you on that, that would support vacating the BIA's decision so that a credibility determination could be remade with the insight from our court being offered to the IJ and the BIA that when you make it, you can't focus on those inconsistencies given their nature. If we were to remand and do that, what should we say about the corroborating documents? Their basis for sending them back to be considered by the IJ, or does the fact that the BIA passed on them, even to the limited extent that you acknowledge it did pass on them, preclude us from, if we were to vacate, sending those documents back to the IJ? What I would say is that everything that happened up until now was tainted by my client's lack of counsel. If we put aside the lack of counsel point for a second on the exhaustion, I'm just trying to think about what our discretion is or how to handle it because on the one hand, if I'm troubled that there is a finding on credibility based on inconsistencies that I think under our law don't support that finding, if it then goes back to the IJ, should the IJ be blind to all the new evidence in the record or is that something that if it did go back, you would then have an opportunity to try and put that before the IJ and the IJ could just rule on it and it would come up in the ordinary course in the next appeal or is that something that is before us now to decide whether it goes to the IJ? I just can't think my way through that so I'm looking for some help. Well, I think that my client was entitled to a full and fair hearing. Those corroborating documents that came in afterwards should have been considered by the IJ. The IJ is the ultimate fact finder. The BIA is not a fact finding body and therefore the case should be sent back for further hearing on the evidence I'll ask you one last time. If we did vacate and remand on the ground that the inconsistencies were too small to support the credibility finding, would you then have the opportunity to introduce the documents at that new hearing? Is there anything that would preclude you from doing that even if we were just silent on the topic? No, I mean what ordinarily happens in these cases when they're not these cases and what we often see in the immigration court is that it is reset. A case that comes back is reset for a new individual hearing and then the judge allows, the IJ allows, you know further supplementation of the record so I would expect the IJ to allow that. Great, thanks. Okay, thank you counsel. Thank you very much. At this time, Attorney Friedel, please mute your audio and video. Attorney Hamilton, please unmute your audio and video. Proceed. Proceed. Thank you. You may have pleased the court. Gene Hamilton on behalf of the respondent, William Barr, the Attorney General of the United States. Your honors, the sole issue that is presently before this court in which this court has jurisdiction to entertain simply relates to the adverse credibility finding below that you all were just addressing with the petitioner's counsel. The other issues that were raised by the petitioner in his brief, that being a purported violation of his right to counsel under statute and a purported violation of his due process rights, were not administratively exhausted below and therefore this court has no jurisdiction to entertain his claim now. The simple fact of the matter is that the petitioner could have filed a motion to reconsider up until 30 days after the date of the board's decision. He could have said, this is what you got wrong with the decision and here's what you need to address. You could have filed a motion to reopen and offered additional evidence. He has, I believe, 90 days to do that. He didn't either. Instead, he filed a petition for review with this court and raised issues for the first time on appeal that he didn't raise below. So the government's position is with respect to those issues, this court lacks jurisdiction and his petition for review should be dismissed in part as to those issues. Regarding the issues about the we believe that substantial evidence supports the immigration judge in the board's adverse credibility finding in this case. The adverse credibility finding in this case really boiled down to three major things. First, the number of times that he was detained, eight as he testified in his merits hearing versus four as he testified before the asylum officer in his credible fear interview. The second issue was whether or not he was actually stabbed on September 18th. In the merits hearing, he said yes. In his credible fear interview- Counsel, let me please ask you this question. I mean, the law is clear that the IJ is entitled to consider the content of the credibility fear interview in addressing the issue of inconsistency, but the law also seems clear that in evaluating that interview, there should be an acknowledgement of how it's conducted. I mean, it is not a verbatim transcript. Notes are made and recorded, and the only thing that the applicant is asked to confirm is sort of a summary of what he said. So, I mean, how do you respond to the suggestion that, yeah, the IJ was entitled to look at that interview, but the IJ, given the prevailing law, that you have to acknowledge the limitations of that kind of interview, really ascribed far too much weight to the inconsistencies and didn't allow for the possibility that there could be translation issues, an inaccurate summary. How do you respond to that concern? Thank you for that important question, Judge. I think it really boils down to the fact, a few simple facts. Number one, the credible fear interview is conducted with the petitioner under oath. He swears to provide truthful testimony at the beginning of the credible fear interview, and that's a standard practice. At the end, while it is certainly not a verbatim transcript that is produced, there is a summary of the interview that is provided to the petitioner, and he has an opportunity to review it. He was specifically asked if there's anything else that he would like to add beyond what he was asked by the asylum officer, and at the end, he acknowledged that everything was accurate and correct and that there was nothing that needed to be changed. Well, that summary interview seems, at least as a narrative, seems entirely consistent with the account that he gave at the hearing. That summary interview does not contain any of these specific inconsistencies as the IJ saw it. It's of a more general nature, and in its generality, seems quite consistent with the account that he gave before the IJ. Isn't that true? Thank you, Judge. I think that one of the critical differences here with respect to the general narrative that you offer and the general nature of his claim, as opposed to the specific facts that were elucidated, were such that they allowed the immigration judge to rely on a glaring consistency, one being primarily the number of times he was detained. He described being detained the initial time in 2014 in his credible fear interview, and explicitly stated that he was detained three additional times. When you juxtapose that against his testimony in the immigration, I'm sorry, in the immigration court, where he explicitly says he was detained eight times, that's a glaring inconsistency. The summary, which is what the summary of the credible fear interview, which was whether he was asked to determine whether that was accurate, does the summary say only four times? The summary describes, in response to my question, does the summary say only four times? The summary describes one incident and then says three additional times. So, put together, natural inference would be four times. Are you sure that the summary contains that number? I don't think that's right, counsel. I don't think that's right. The summary is just one paragraph that just refers to beatings and detentions in general, with no numbers. Thank you, Your Honor. On page 275 of the administrative record, it contains, it's a follow-up from a description of the first initial detention from 2014, and then, in the middle of the page, the first sentence response says, I was detained three more times. You're referring to the notes of his answers to questions. Correct. At the summary, at the bottom of that, which is the only thing he's asked to confirm the accuracy of, that summary paragraph makes no reference to a number. I acknowledge that, Judge. So, there was no point was he asked whether the answer that is put forth in the notes as to what he answered, whether that specific answer was accurate. He is only asked, is this summary of our interview accurate? He says, yes, and nothing in that summary paragraph gives a number. So, there's no inconsistency between his statement that the summary is accurate and what he then testifies. The only discrepancy is between the notes of his answer and what he says, but he then explains why there might be that discrepancy, which goes just to Judge Lopez's point, which is, isn't the judge supposed to take into account the nature of the credible fear interview and the fact that there's no verbatim transcript of it? Thank you for that question and that point, Judge. Yes, the judge is supposed to consider all of those factors. And in this case, the judge did. The judge asked him extensively after his testimony about some of the things that he perceived as discrepancies in his testimony. And he also explained about the requirements to provide corroborating evidence. But certainly before his individual hearing and then at his individual hearing, he explained why that corroborating evidence that the limited evidence that he did provide was not sufficient to overcome the judge's perception of the inconsistent statements that have been provided between the credible fear interview and his individual hearing. The Board of Immigration Appeals specifically noted in its decision, as was raised earlier, that the additional information that was provided was not enough to overcome those prior inconsistencies that the immigration judge had based his decision upon. Even if you're assuming that there was some chain of custody, some kind of explanation as to how he was able to provide these documents now versus when he was in the immigration court, it simply wasn't enough to overcome the fact that the judge did prove that there was a significant difference between the testimony about the number of times he was detained. So if I understand you, it's not nearly the inconsistencies. It's the fact that the judge carefully questioned him as to those inconsistencies to get an explanation. The judge found that he did not think those explanations were adequate, and the judge told him you could make up for this with corroborative evidence. But the corroborative evidence you're presenting at the hearing is not sufficient. He then presents to the BIA further evidence he says is corroborative evidence, and the BIA says, well, we've looked at it, and we don't think it does corroborate. Is that, in essence, your position? Yes, Judge, that's correct. If we were of the view that the—and it sounds like you agree with this—at least part of the IJ's credibility finding depended on a determination that the inconsistencies were of a nature that would support a finding him not being credible, correct? Correct. So if we were to find that that part was error because it didn't take account of the nature of the responses or the notes reflecting responses in the credible fear interview and didn't take account of the fact that the summary was not inconsistent and that that was all he was asked about, that would support vacating and remanding on the credibility finding. Would you agree with your opponent that if we did vacate and remand on the credibility finding that in that new hearing, the IJ could then take account of the new documents? Thank you for that question, Judge. As to the latter part of your question, yes, on remand, if this case was remanded, the immigration judge could then consider additional documentation that had been provided. Any further questions? No. No. No. No. Thank you both. Thank you, Judge. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.